UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. Alvin R. McDonald, | § | CIVIL ACTION NO.<u>09-CV-573-GKF-TLW</u> |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| 1. Akal Security,  and | § | |
| 2. Eric Holder,  Attorney General of the | § | |
| United States, | § | |
| Defendants. | § | A JURY IS DEMANDED |

**ORIGINAL COMPLAINT**

If Alvin R. McDonald  had been judged on the quality of his work, he would still be

serving as a Court Security Officer and guarding the federal judiciary of the Northern District of

Oklahoma. Although he performed his job as a Court Security Officer with distinction, he lost

his job because of disability discrimination.

<u>PARTIES</u>

1.      The plaintiff Alvin R. McDonald  is an individual who resides in Tulsa, Tulsa

County, Oklahoma.

2.      The defendant Akal Security, is a New Mexico corporation doing business in

Oklahoma, and may be served with process by serving its registered agent, The Corporation

Company, 120 N. Robinson, Suite 735, Oklahoma City, Oklahoma 73102.

3.      The defendant Eric Holder is the United States Attorney General and may be

served with process at his business address, Office of the Attorney General, Department of

Justice, 950 Pennsylvania Ave., N.W., Washington, D.C.  20530-0001.  A copy of this complaint

is also served on the United States Attorney for the Northern District of Oklahoma.

<u>JURISDICTION</u>

4.      This case is brought under the Americans with Disabilities Act, 42 U.S.C. §

12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.  This Court has

jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This action is not

related to any other case filed in this court.

5.      Venue is invoked pursuant to 28 U.S.C. § 1391.

<u>STATEMENT OF THE PLAINTIFFS' CASE</u>

6.      The plaintiff, Alvin McDonald is well-qualified to guard the federal judiciary.

He came to the job with twenty-five years of law enforcement experience with the Tulsa Police

Department.

7.      McDonald started his police career at the recommendation of a sergeant with that

department.  In 1976,  McDonald was working at a Tulsa hospital when this sergeant was

hospitalized after being shot on duty.  This sergeant was so impressed with McDonald that he

asked him repeatedly to consider a career in law enforcement with the Tulsa Police Department.

McDonald finally agreed and made his application, which was accepted.  After completing the

academy, he began his law enforcement career as a patrolman.  Over the years, he worked

successfully in a wide variety of roles, including the Gun Task Force, Larceny Division, White

Collar Crimes Unit, Gang Task Force and Hate Crimes Unit. Later,  McDonald was promoted to

Robbery Detective and then Homicide Detective.

8.      During his tenure with the Tulsa Police Department, McDonald received two Life

Saving Awards for his valor while both on duty and off duty.  One award was bestowed on him

after he saved a family from certain death when he rescued them from a house fire.  He was off

2

duty when he passed their home and saw the fire.  The second award was bestowed upon him after he saved the life of a man who was severely wounded during a liquor store robbery.

9.   McDonald retired from the Tulsa Police Department in September 2001. The following month, he was hired to work as a Court Security Officer by Akal Security, Inc., a contractor of the United States Marshal's Service.  Akal had been hired to provide court security officers at a number of federal courthouses, including the federal courthouse in Tulsa, Oklahoma.      10.   Before he started working for the Marshal's Service, McDonald was informed that he needed to undergo a physical in connection with his job.  He took the physical and was thereafter put to work as a Court Security Officer at the federal courthouse in Tulsa, Oklahoma. There was never any issue whatsoever regarding his ability to do the job or his hearing ability.  He did his job with distinction, even stopping a robbery at the adjacent post office.  Just as he had with the Tulsa Police Department, McDonald approached his job with diligence and professionalism.

11. In addition to the physical he took when he started the job, defendants also required McDonald to take physicals on an annual basis. During one such examination, he was told by an audiologist that he had failed the hearing portion of the examination. The audiologist suggested that he be tested with state of the art hearing aids, and he was. He was then told that with the use of the aids, he passed the tests and was declared fit for duty once again. However, in 2008, when he took an annual examination, he was told that he could not test his hearing ability using the aids he had utilized before during the testing. He was told that, without them, he had not passed the hearing part of the medical exam. He confirmed that he could not pass the exam while

utilizing his state of the art hearing aids that he had used while working as a CSO. It was in that condition (without hearing aids) that the defendants chose to assess his hearing skills.

12.   On July 11, 2008, McDonald was terminated from his job, not because of any performance problem, but because of his disability.  The defendant, Akal Security , told him that he was being terminated because the United States Marshal's Service had determined that he was substantially impaired in his ability to hear. The defendants branded him as having a significant conversational hearing loss. The USMS physician filled out a form that documented this perception, and that form was forwarded to Washington D.C. This form was acted upon and the USMS used it in order to remove him from his position as a CSO.   This perception was inaccurate since he never had any hearing deficits while working for the defendants.  In fact, he never had any problem with his job performance at all.  This was a record of a disability that resulted in his being fired from the job despite his admitted good performance of the essential functions of the job.

13.   The government physician who made the recommendation to disqualify Mr. McDonald recorded on an official form that he had a "significant hearing loss" and that hearing aids " actually cause increased disruption."  Paradoxically, Defendants do not allow hearing aids to be utilized during their assessment of the CSOs, but they do allow them on the job.  And, with the same hearing aids that are permitted day in and day out on the job, McDonald was certainly capable.

14.   The demand that McDonald take a hearing test without a hearing aid is a screening criteria that screens out the disabled, which is per se unlawful discrimination under the Rehabilitation Act.  Likewise, the decision of Akal Security to contract with a party which has

4

the power to discriminate against Akal Security's own employees is per se unlawful discrimination under the ADA.

15.     Even though Akal Security knew that McDonald  was eminently qualified to continue working as a CSO, it fired him based on his disability because it has surrendered the right to do otherwise to the USMS.  Specifically, Akal Security surrendered its employee to disability discrimination by virtue of its contractual arrangement with the government.  It even coded him as ineligible for rehire.

Disability Discrimination

16.     The plaintiff is a qualified individual with a disability.  The plaintiff performed his job as a Court Security Officer with distinction, but was fired because of a disability.  He has an actual disability as he was assessed by defendants.  He was also regarded as having a disability (based on its defendants perception that McDonald was substantially limited in his ability to hear) by them, and was discharged because of a record of a disability in that the government created a record of a hearing disability that prompted the USMS to order removed because of that record.  Akal Security's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.  See 42 U.S.C. 12112(b).  The law defines unlawful discrimination as "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter."  42 U.S.C. 12112(b)(2).  Akal Security cannot contract out of its obligations under the disability law by allowing the government to make a decision that is illegal under the ADA and then blindly going along with it.  Holder's conduct violates the Rehabilitation Act, which also prohibits disability

discrimination.  It has violated two separate provisions of the statute.  First, it fired him for

having a disability.  42 U.S.C. 12112(a).[1]  Second, it employed "qualification standards,

employment tests or other selection criteria that screen out or tend to screen out an individual

with a disability or a class of individuals with disabilities."  See 42 U.S.C. 12112(b)(6).

17.  The government knows that such a screening technique is unlawful, as best

evidenced by the fact that it sues state and local police departments who utilize this screening

device.  It even calls such requirements per se violations of disability law.  The plaintiff is a

qualified individual with a disability and was discriminated against because of such disability.

42 U.S.C. 12112(b)(6).

18.  In imposing a requirement that Plaintiff may not use hearing aids for medical testing

(even though allowed on the job), the Defendants have violated the ADA and the Rehabilitation

Act, respectively.  These statutes prohibit an employer from using qualification standards that

screen out or tend to screen out those with disabilities.  42 U.S.C. 12112(b)(6).  Defendants'

conduct in discharging Plaintiff constitutes discrimination in employment on the basis of a

disability or perceived disability or a record of a disability.  Defendants chose to evaluate his

hearing without his mitigating measure, and of course, Plaintiff has an actual disability in

hearing under the state that the defendants chose to test him.  The government doctor, due to

perception of a serious hearing impairment, filled out a record which was sent to the USMS,

which determined to remove him because of that record of a disability.

---

[1]  The ADA and Rehabilitation Act have the same standards. 42 U.S.C 12117(b).  For ease of reference, the ADA citation is provided.

6

19.    The plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered by Akal Security and Holder.  He requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against Akal Security and such right to sue letter has been issued.  McDonald timely files this lawsuit to vindicate his rights.  In addition, the plaintiff has received a right to sue letter from the Equal Employment Office of the Justice Department on his claim against the federal government and timely files this lawsuit to vindicate his rights. He has exhausted all administrative prerequisites to filing this suit.

<u>Damages</u>

20.  The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

21.  Further, because Akal Security's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

<u>RELIEF REQUESTED</u>

The plaintiff asks this court to enter a judgment:

1.  Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973;

2.  Enjoining and permanently restraining these violations of law;

3.  Directing the defendants to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4.  Directing the defendants to reinstate plaintiff, or in the alternative, award him front pay;

5.  Directing the defendants, to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

6.  Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

7.  Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

8.  Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

9.  Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,


  *S/ Michael D. McGrew*
Michael D. McGrew, OBA #13167
223 North 3rd Street, No. 206
Muskogee, Oklahoma 74401
(918) 684-4321
Fax (918) 684-4322
mcgrewslaw@yahoo.com

John Griffin, Jr.
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas  77901
(361) 573-5500 – Telephone
(361) 573-5040 – Telecopier

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard

Houston, Texas  77008
(713) 526-5677
Fax (713) 526-5691

Counsel for the Plaintiff