**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ALVIN R. McDONALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-cv-573-CVE-TLW |
| | ) |
| AKAL SECURITY and ERIC HOLDER, | ) |
| ATTORNEY GENERAL OF THE | ) |
| UNITED STATES | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court are three motions, defendant's Motion for Protective Order (dkt. # 42), plaintiff's Motion to Compel (dkt. # 43), and defendant's Motion to Seal Document (dkt. # 50). Responses and replies were filed with respect to each motion, along with supplemental briefing. (Dkt. ## 52-55, 58-60, 66, 68, 70, 75). The undersigned held a hearing on July 14, 2010.

The Motion to Seal (dkt. # 50) is GRANTED for the reasons stated during the hearing. The Motion to Compel (dkt. # 43) is DENIED without prejudice to refiling, as set forth below. The Motion for Protective Order (dkt. # 42) is DENIED.[1]

**Analysis**

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff seeks, among other things, "determination of fitness reports" (along with any backup documentation) for all Court Security Officers ("CSOs") for the time period January 1, 2005 to the present (collectively referred to as

---

[1] At the July 14, 2010 hearing, the undersigned denied in part and granted in part the Motion for Protective Order. After reviewing the parties' briefs and the recording transcript, the undersigned has concluded that the Motion for Protective Order should be denied, in its entirety, for the reasons set forth below.

the "Reports").[2] Hearing Recording at 2:35 p.m. The Reports include information related to each CSO's post-offer and pre-employment medical examination and are maintained by the United States Marshals Service. Identical reports for prior time periods have already been produced to plaintiff's counsel as a result of other federal litigation. (Dkt. # 52-6).

Plaintiff argues that the Reports are relevant to defendant's affirmative defenses of (1) business necessity (i.e., that plaintiff's former position has a legitimate qualification standard that plaintiff could not meet) and (2) direct threat. (Dkt. # 39 at 7-8) (". . . hearing standards utilized by the Marshals Service constitutes a bona fide occupational qualification standard" and "[a]llowing Plaintiff to provide security . . . would pose a significant risk of harm that would pose a direct threat. . ..").  Defendant argues that the Reports are not relevant to its affirmative defenses and that the Americans with Disabilities Act ("ADA") bars the production of the Reports even if they are otherwise relevant.

**Business Necessity Defense**

The business necessity defense, or qualification standard, was summarized by the Tenth Circuit in Tate v. Farmland Industries, Inc., 268 F.3d 989, 993 (10th Cir. 2001):

> The question of whether a job requirement is a necessary requisite to employment initially focuses on <u>whether an employer actually requires all employees</u> in the particular position to satisfy the alleged job-related requirement. Cf. Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir.1995) (holding under the ADA that an essential function of a job must be actually required of all employees in the particular position). This inquiry is not intended to second guess the employer or to require the employer to lower company standards. Id.; see also H. Rep. No. 101-485(II), at 55 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337

---

[2] This Opinion and Order addresses only the Reports. Within ten (10) days, the parties are to meet and confer in an effort to resolve all remaining discovery issues, including those raised in plaintiff's Motion to Compel (dkt. # 43), in a manner that is consistent with this Opinion and Order. If there is an appeal to the District Court Judge, the parties remain obligated to conduct the meet and confer within ten (10) days; however, defendant is not obligated to produce the Reports until the appeal is ruled on by the District Court. If, after the meet and confer, there continue to be unresolved discovery disputes, plaintiff may file a revised Motion to Compel.

> (The ADA "does not undermine an employer's ability to choose and maintain qualified workers."). Provided that any necessary job specification is job-related, <u>uniformly-enforced</u>, and consistent with business necessity, the employer has the right to establish what a job is and what is required to perform it.

<u>Id.</u> (emphasis added). The Tenth Circuit has reiterated this language in subsequent decisions. <u>See</u> <u>Wilkerson v. Shinseki</u>, 606 F.3d 1256, 1264 (10th Cir. 2010); <u>Kellogg v. Energy Safety Services Inc.</u>, 544 F.3d 1121, 1127 (10th Cir. 2008). Thus, to prevail on its first affirmative defense, defendant must show that the qualifications on which it relies in this case are uniformly enforced.

Plaintiff argues that the information contained in the Reports is the only information that can establish that defendant does or does not uniformly enforce its CSO job qualifications, including those at issue in this case. Specifically, plaintiff argues that the medical information contained in the Reports will establish that defendant has hired many CSOs with disabilities that are the same as, or more severe than, plaintiff's, thus proving that the qualification standards are selectively, not uniformly, enforced. Plaintiff does not limit his argument to his specific "disability," instead arguing that the Reports will show that defendant failed to uniformly enforce all of its qualification standards. Defendant, on the other hand, argues that its policies do not need to be "uniformly" enforced for it to establish this affirmative defense. Defendant's position is not consistent with the Tenth Circuit cases that have addressed this issue. Moreover, at the hearing defendant's counsel acknowledged that in order to support its affirmative defenses, it may call a witness to testify that its policies, as they relate to the physical qualifications for CSOs, are either uniformly applied or are applied except in "some instance(s)." Hearing Recording 2:27:45-2:30:56. The Reports will almost certainly contain information that supports

or rebuts such testimony, and it is likely the Reports contain the only information that can do so.[3] Therefore, the Court concludes that the Reports, whether or not they contain information related to the specific qualification that defendant alleges was not met by plaintiff, are relevant (for discovery purposes) to defendant's business necessity defense and, absent a valid privilege, are discoverable under Rule 26.

**Direct Threat Defense**

"Direct Threat" means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a 'direct threat' is based on "an individualized assessment of the individual's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r). Plaintiff argues that the Reports are probative of what disabilities defendant considers to be "direct threats" and of the quality of defendant's individualized assessment of plaintiff's ability to "safely perform the essential functions of the job." If, for example, defendant routinely employed CSOs whose "disability" posed a much greater threat than that posed by plaintiff's, then defendant's individualized assessment of plaintiff could be called into question. The Court agrees that a comparison of defendant's policy to the information contained in the Reports will be probative of what defendant considers to be a direct threat (whether or not that threat is the same one allegedly posed by plaintiff) and, thus, of whether defendant conducted a legitimate individualized inquiry of plaintiff. Thus, the Court concludes that the Reports are relevant (for discovery purposes) to defendant's affirmative defense of direct threat and, absent a valid privilege, are discoverable under Rule 26.

**The ADA**

---

[3] Defendant's attorney did not dispute this conclusion when questioned by the Court, but instead relied on its argument that the ADA bars any discovery of the Reports, whether or not they are relevant. Id.

Defendant's primary argument is that Fed. R. Civ. P. 26 (c)(l)(A) and Fed. R. Civ. P. 26(c)(l)(D) ". . . forbid[] inquiries into and discovery of information contained in or derived from the medical records of non-parties, the disclosure of which is prohibited by 42 U.S.C. § 12112(d)(3) and (d)(4) [of the ADA]." (Dkt. # 42-1 at 1). Section 12112(d)(3) provides as follows:

> A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if—
>
> (A) all entering employees are subjected to such an examination regardless of disability;
>
> (B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and <u>is treated as a confidential medical record</u>, except that— (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations; (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and (iii) government officials investigating compliance with this chapter shall be provided relevant information on request; and
>
> (C) the results of such examination are used only in accordance with this subchapter.

Id.[4] (emphasis added).

Defendant argues that this section creates a statutory privilege for information obtained during post-offer medical examinations that Fed. R. of Civ. P. 26(b)(1) protects from discovery ("[p]arties may obtain discovery regarding any nonprivileged matter. . ."). Defendant admitted at the hearing that no court has previously adopted this argument and that the very documents at issue here have been produced (under court order) in other matters. The only cases cited by defendant in support of its theory are Baldridge v. Shapiro, 455 U.S. 345, 360 (1982),

---

[4] There is no dispute that the Reports contain information that is subject to Section 12112(d)(3).

Chowdhury v. Northwest Airlines Corp., 226 F.R.D. 608, 611-12 (N.D. Cal. 2004), and In re England, 375 F.3d 1169, 1177 (D.C. Cir. 2004).

In Baldridge, the Supreme Court ruled that Census data was immune from Freedom of Information Act Requests and from disclosure in civil lawsuits pursuant to Rule 26(b)(1). In reaching its decision, the Supreme Court relied, in part, on 13 U.S.C. § 9(a). Section 9(a) includes the following language:

> No department, bureau, agency, officer, or employee of the Government, except the Secretary in carrying out the purposes of this title, shall require, for any reason, copies of census reports which have been retained by any such establishment or individual. Copies of census reports which have been so retained <u>shall be immune from legal process</u>, and shall not, without the consent of the individual or establishment concerned, be admitted as evidence or used for any purpose in any action, suit, or other judicial or administrative proceeding.

Id. (emphasis added). This language is much stronger than that found in the ADA. The ADA merely declares that information related to post-offer medical examinations "shall be treated as a confidential medical record." There is no express indication in the ADA that information related to post-offer medical examinations is immune from service of process or from discovery.

In re England is no different. In England, the Ninth Circuit considered whether discovery of information related to military selection boards is permitted under Rule 26. Id. The statute at issue was 10 U.S.C. § 618, which provides as follows:

> Except as authorized or required by this section, proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board.

375 F.3d at 1177. The Ninth Circuit reasoned that "[t]his is the language of command – 'may not be disclosed' - in a context in which commands are expected to be obeyed. There is no inherent ambiguity in the phrase "may not be disclosed" that would justify departing from those plain terms pursuant to a judicially-crafted exception." Id. Thus, the Ninth Circuit relied on

6

clear language in a statute that prohibited <u>disclosure</u>, not language that labeled the information sought as "confidential."

Likewise, in <u>Chowdhury</u>, the district court found that Section 114 of the Homeland Security Act enabled the Transportation Security Administration to proscribe regulations limiting the dissemination of certain airline data. <u>Id.</u> at 610. Section 114 provides that ". . . the Under Secretary [of the TSA] shall prescribe regulations prohibiting the <u>disclosure</u> of information obtained or developed in carrying out security . . . if the Under Secretary decides that disclosing the information would . . . be detrimental to the security of transportation." <u>Id.</u> (emphasis added). Again, this language is much stronger than the language contained in the ADA. Under Section 114, the TSA is granted the authority, without qualification, to prohibit "<u>the disclosure</u> of information obtained or developed in carrying out security." <u>Id.</u> (emphasis added). As the court noted, "[t]he statute does not make an exception for civil litigation." <u>Id.</u> The ADA, on the other hand, requires an employer to treat as confidential information related to post-offer medical examinations. There is little doubt that the Reports can be treated "confidentially" within the context of this civil litigation. Had Congress intended to bar the production of such information entirely, or in civil litigation, it could have easily stated that intent, or at least included language that prohibited disclosure.

To the extent that defendant is arguing that treating information as "confidential" is no different than "non-disclosure" for purposes of Fed. R. Civ. P. 26, that view has not been generally accepted. In fact, there is ample case law indicating that confidential information is not "privileged," as that term is used in Rule 26. <u>See</u> <u>E.E.O.C. v. Thorman & Wright Corp</u>, 243 F.R.D. 426, 430 (D. Kan. 2007) ("a concern for protecting confidentiality does not equate to privilege.") (quoting <u>DIRECTV, Inc. v. Puccinelli</u>, 224 F.R.D. 677, 682 (D. Kan. 2004));

7

General Elec. Capital Corp. v. Lear Corp., 215 F.R.D. 637, 643 (D. Kan. 2003) ("confidentiality does not equate to privilege."); Principe v. Crossland Sav., FSB, 149 F.R.D. 444, 450 (E.D. N.Y. 1993) (documents produced under protective order "remain confidential"); Luey v. Sterling Drug, Inc., 240 F. Supp. 632, 636 (D. Mich. 1965) (distinguishing between confidential and privileged materials, the former being subject to discovery).

In addition, the policy reasons behind the Supreme Court's decision in Baldridge (and the other cases cited by defendant) are much stronger than those which defendant asserts here. In Baldridge, the Supreme Court cited the need for individuals who provide Census data to know that their personal information would not be disclosed. In England, the issue was military selection boards, a process which requires assurances of non-disclosure. In Chowdhury, the issue was national security. In this case, however, the only interests at stake are the privacy interests of individual CSOs, and the ADA does not promise those individuals that the information contained in the Reports will not be disclosed. Rather, the ADA promises confidentiality, and confidentiality can be adequately safeguarded through a court issued protective order.

**Timeliness of Defendant's Motion**

Plaintiff asserts that defendant's motion is not timely, relying on a May 3, 2010 stipulation, which provides as follows: "[t]he parties have now agreed that settlement negotiations are ongoing and, pursuant to the Court's prior Order, the time within which Defendants may respond, object, or otherwise move in response to all pending discovery requests is extended through and including June 3, 2010." (Dkt. # 29 at 1). Defendant filed its Motion for Protective Order on June 18, 2010, more than two weeks after the stipulated deadline

and more than a week after it served its discovery responses. Thus, defendant's Motion for Protective Order is untimely and, for this additional reason, is DENIED.[5]

**Applicability of the ADA to Defendant**

Defendant does not dispute that it has possession of the records sought by plaintiff. This fact draws into question the applicability of Section 12112 in the first instance. According to defendant, confidential medical records, such as those sought here, can only properly be accessed by a "covered entity." The term "covered entity" means an "employer, employment agency, labor organization, or joint labor management committee." 42 U.S.C. § 12111(2). According to defendant, however, it is not the employer of the individuals whose medical records are now at issue. (Dkt. # 7 at 5) ("Plaintiff was not employed by the United States Marshals Service nor was the Marshals Service a joint employer of the plaintiff with co-defendant Akal Security, Inc."). Therefore, it would appear that either Section 12112 does not apply to defendant, or defendant's possession of the Reports is not authorized under the law. Because the Court concludes that Section 12112 does not create a statutory privilege, this issue is not addressed further, although it may be another basis upon which to deny defendant's Motion for Protective Order.

**Conclusion**

Based on the foregoing, defendant's Motion to Seal (dkt. # 50) is GRANTED. Plaintiff's Motion to Compel (dkt. # 43) is DENIED without prejudice to refiling, as set forth above.

---

[5] Defendant took the position during the hearing that if its Motion for Protective Order was untimely, so was plaintiff's Motion to Compel, because plaintiff's motion was not filed on or before June 3, 2010. This position is in error. The deadline in the Stipulation clearly applies only to defendant and its response to plaintiff's discovery requests. (Dkt. # 29). The Stipulation says nothing about discovery motions that might be filed by plaintiff. In this respect, the Stipulation is entirely reasonable, since the issue that gave rise to the Stipulation was the defendant's effort to avoid discovery entirely. (Dkt. # 24).

Defendant's Motion for Protective Order (dkt. # 42) is DENIED. Within ten (10) days, the parties shall submit a proposed protective order to the Court that will ensure the confidentiality of the Reports and that is consistent with the undersigned's form protective order. The form protective order is on the Court's website under Magistrate Judge Wilson.

SO ORDERED this 10th day of August, 2010.

_____
T. Lane Wilson
United States Magistrate Judge