## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ALVIN R. MCDONALD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CV-0573-CVE-TLW** |
| | ) | |
| **ERIC HOLDER,** | ) | |
| **Attorney General of the United States,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Federal Defendant's Objections to [Appeal of] Magistrate Judge's Order Denying Motion for Protective Order (Dkt. # 78); Defendant's Motion for Leave to File Second Amended Answer and Affirmative Defenses (Dkt. # 82); and Federal Defendant's Objections to [Appeal of] Magistrate Judge's September 28, 2010 Protective Order (Dkt. # 92). Defendant Eric Holder, Attorney General of the United States, appeals two decisions by the magistrate judge relating to plaintiff's discovery requests. He also seeks leave to file a second amended answer asserting a defense based on plaintiff's alleged failure to exhaust administrative remedies.

## I.

Alvin McDonald was employed as a court security officer (CSO) by Akal Security, Inc., a contractor for the United States Marshals Service (USMS). McDonald had a physical examination when he was initially hired, and he had an annual physical examination during his employment. McDonald's hearing was tested as part of the annual physical examination. On July 11, 2008, McDonald's employment was terminated because he did not pass a hearing test. McDonald claims

that his hearing was within acceptable ranges when he used his "state of the art" hearing aids, but the government physician conducting the physical examination refused to allow McDonald to wear his hearing aids during the hearing test. Dkt. # 2, at 4. McDonald filed this case alleging that Akal and the USMS discriminated against him based on a disability, and he sought relief under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and the Rehabilitation Act, 29 U.S.C. § 791 et seq.[1]  Holder answered the complaint and, inter alia, asserted the affirmative defenses of business necessity and direct threat to the health and safety of others. Dkt. # 7, at 6.

Plaintiff sought discovery of determination of fitness reports (Reports) for all CSOs from January 1, 2005 to the present.[2]  Dkt. # 42-2, at 31. Holder requested a protective order preventing this discovery and argued that the Reports are privileged under the ADA. Dkt. # 42, at 8-10. Holder also argued that the Reports are irrelevant and production of the documents would violate the privacy rights of third-parties. Id. at 20-29. Plaintiff responded that he needed this discovery to challenge Holder's assertion that the USMS uniformly applied the hearing requirement and to rebut the affirmative defenses of business necessity and direct threat. Dkt. # 52. The magistrate judge held a hearing on the government's motion for protective order on July 14, 2010. See Dkt. # 45. The magistrate judge entered an opinion and order (Dkt. # 76) denying Holder's motion for a

---

[1]     The ADA does not provide a claim against the federal government, and plaintiff asserts a claim against Holder under the Rehabilitation Act only. Plaintiff has voluntarily dismissed his claims against Akal, and the only claim remaining for adjudication is plaintiff's Rehabilitation Act claim against Holder. See Dkt. # 74 (stipulation dismissing plaintiff's claims against Akal with prejudice).

[2]     Plaintiff requested the discovery of Reports dating back to 2001. However, plaintiff's counsel already possessed copies of all Reports from 2001 to 2005, because these Reports were produced in prior litigation in which plaintiff's counsel represented a CSO litigating a claim similar to plaintiff's claim. See Dkt. # 52, at 6.

2

protective order.  He found that the discovery requested by plaintiff was relevant to Holder's business necessity and direct threat defenses, and the Reports were discoverable under Fed. R. Civ. P. 26. He rejected Holder's argument that the ADA created a privilege that prevented discovery of the Reports in civil litigation, but reserved ruling on the proper procedure for production of the documents to preserve the confidentiality of medical information of third parties contained in the Reports.  Dkt. # 76, at 8.  Holder appealed the magistrate judge's decision under Fed. R. Civ. P. 72, and asks the Court to grant his motion for a protective order precluding production of the Reports. Dkt. # 78.

The parties were unable to agree on a protective order governing production of the Reports, and jointly requested a hearing before the magistrate judge to resolve their dispute.  Dkt. # 79.  The magistrate judge held a telephone conference with the parties, but the parties were still unable to completely resolve their disagreements concerning the language of the protective order.  Dkt. ## 84, 85.  The magistrate judge held a second telephone conference with the parties.  Counsel for defendant would not agree to the filing of any unsealed document containing medical records of third parties, even if personal identifying information were removed.  Dkt. # 88.  The magistrate judge entered a protective order (Dkt. # 91) permitting the filing of unsealed copies of medical information of third parties, but the medical records had to be redacted to remove personal identifiers and defendant must be given an opportunity to review the documents at least 48 hours prior to filing.  He also authorized defendant to reurge his objections to the protective order based on the outcome of defendant's earlier appeal.  Id.  Holder also appealed the entry of this protective order.  He argues that plaintiff should not be permitted to file an unsealed document containing the

3

medical information of a third party, and he objects to production of the Reports without additional procedures to protect the confidentiality of medical records of third parties.  Dkt. # 92.

Holder also requests leave to file a second amended answer because he has "determined that [p]laintiff failed to timely exhaust his administrative remedies."  Dkt. # 82, at 1.  Holder claims that McDonald failed to seek "counseling" with the USMS Office of Equal Employment Opportunity within 45 days of his termination, and this is a prerequisite to suit under 29 C.F.R. § 1614.105(a)(1). Id. at 2.  McDonald responds that the proposed amendment would be futile, because he attempted to exhaust his administrative remedies in a timely manner but a government employee refused to accept his complaint.  Dkt. # 89, at 5-8.  McDonald also argues that Holder's motion is untimely and that he will be prejudiced if the motion is granted.  Id. at 4.

## II.

Defendant appeals the magistrate judge's decisions denying his motion for a protective order (Dkt. # 42) from plaintiff's requests for production of the Reports, and he also challenges language in a subsequent protective order (Dkt. # 91) allowing plaintiff to file unsealed copies of Reports containing medical records of third parties.  Defendant also requests leave to file a second amended answer asserting that plaintiff failed to exhaust his administrative remedies before filing this lawsuit.

## A.

Defendant asks the Court to reverse the magistrate judge's decision requiring production of the Reports, because the Reports contain confidential medical information of third parties that is privileged under the ADA.  Dkt. # 78.  Plaintiff responds that defendant has placed the Reports at issue by asserting the affirmative defenses of business necessity and direct threat, and the only

meaningful way for plaintiff to rebut these defenses is through discovery of the Reports.  Dkt. # 83, at 7-10.

Federal magistrate judges may hear and determine any pretrial matter that is not dispositive of the case and must enter a "written order setting forth the disposition of the matter."  28 U.S.C. § 636(b)(1); Phillips v. Beierwaltes, 466 F.3d 1217, 1222 (10th Cir. 2006).  Fed. R. Civ. P. 72(a) provides that an order of the magistrate judge on a pretrial matter that is not dispositive shall be set aside or modified only if the order is found to be clearly erroneous or contrary to the law.  Under this standard, the district court should affirm the magistrate judge's order "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Allen v. Sybase, Inc., 468 F.3d 642, 658 (10th Cir. 2006) (quoting Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988)).

Defendant argues that the Reports are irrelevant to the affirmative defenses of business necessity or direct threat and not discoverable under Fed. R. Civ. P. 26.  He asserts that the magistrate judge relied on an impermissibly broad interpretation of the business necessity defense when he found that the Reports are relevant.  Dkt. # 78, at 23-27.  The Tenth Circuit has held that an employer must prove three elements to establish that a job requirement is a business necessity.  An employer has the burden to show that a job requirement is "(1) job-related, (2) uniformly enforced, and (3) consistent with business necessity."  Wilkerson v. Shinseki, 606 F.3d 1256, 1264 (10th Cir. 2010).  Defendant argues that at least five other circuit courts of appeals do not require that job requirement be uniformly enforced to satisfy the business necessity defense.  Dkt. # 78, at 24 n.4.  However, this Court will not disregard binding Tenth Circuit precedent, and it is clear that evidence of selective enforcement may used to defeat the affirmative defense of business necessity.

5

<u>See</u> <u>Tate v. Farmland Indus., Inc.</u>, 268 F.3d 989, 993 (10th Cir. 2001).  This may include evidence that the USMS selectively applied job requirements other than the hearing requirement at issue in this case, because defendant has adopted a litigation strategy that a CSO's inability to meet the USMS's medical requirements requires the termination of employment.  Thus, the magistrate judge correctly concluded that the Reports are relevant to the extent that this evidence may rebut defendant's business necessity defense.  Discovery of the Reports may directly rebut this affirmative defense or lead to the discovery of relevant evidence that the medical requirements applicable to CSOs are not uniformly enforced.

Defendant also asserts that plaintiff's hearing deficiency rendered him a direct threat to himself and others, and the Reports for other employees do not have any relevance to the direct threat posed by plaintiff's hearing loss.  Dkt. # 78, at 27-29.  The Tenth Circuit has stated:

> "Under the ADA it is a defense to a charge of discrimination if an employee poses a direct threat to the health or safety of himself or others." *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290-91 (10th Cir.2000) (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1088 (10th Cir.1997)); *see* 42 U.S.C. § 12113(a)-(b). "The term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The determination that an individual poses a "direct threat" shall be based on ... a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.  In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
>
> (2) The nature and severity of the potential harm;
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm.

29 C.F.R. § 1630.2(r). Though the burden of showing that an employee is a direct threat typically falls on the employer, "where the essential job duties necessarily implicate the safety of others, then the burden may be on the plaintiff to show that [he] can perform those functions without endangering others." *McKenzie v. Benton*, 388 F.3d 1342, 1354 (10th Cir.2004).

Justice v. Crown Cork & Seal Co., Inc., 572 F.3d 1080, 1091 (10th Cir. 2008). The existence of a "significant risk" is an objective assessment and an employer's subjective belief that an employee poses a risk of harm to himself or others is not sufficient. Jarvis v. Potter, 500 F.3d 1113, 1122 (10th Cir. 2007). The magistrate judge found that the Reports are relevant to show what types of disabilities the USMS considers to be a "direct threat" and whether the USMS treats hearing loss in a manner similar to other disabilities. Dkt. # 76, at 4. This decision was not clearly erroneous or contrary to law. The magistrate judge applied the correct legal standard to determine the parameters of the direct threat defense and reasonably determined that the Reports are relevant to rebut defendant's argument that the USMS generally considers hearing loss to present a direct threat to the health and safety of the employee and others.

Defendant argues that any relevance the Reports may have to his affirmative defenses of business necessity and direct threat are substantially outweighed by the privacy rights of third parties. However, defendant's litigation strategy has made the Reports relevant to plaintiff's claims. The magistrate judge noted that defendant intends to call a witness to "testify that [defendant's] policies, as they relate to the physical qualifications for CSOs, are either uniformly applied or are applied or applied except in 'some instances.'" Dkt. # 76. If defendant intends to proceed with this trial strategy, plaintiff must have a reasonable basis to cross-examine the defendant's proposed witness, and the Reports may be the only source of evidence that allow plaintiff to rebut the proposed testimony. Defendant may avoid producing the Reports by expressly disavowing reliance

7

on the business necessity or direct threat defenses, or may adopt a different strategy concerning the presentation of these defenses that would allow plaintiff a meaningful opportunity to rebut the defenses. Unless defendant changes his litigation strategy, plaintiff may compel discovery of the Reports unless the Reports are subject to a valid privilege.

Defendant claims that the Reports contain privileged information that is shielded from discovery, even if the Court determines that the Reports are relevant and otherwise subject to discovery. Defendant relies on a provision in the ADA restricting an employer's use of employee medical examinations as the basis for its assertion of privilege. The relevant provision of the ADA provides:

(3) Employment entrance examination

A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if--

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that--

(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

(ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and

(iii) government officials investigating compliance with this chapter shall be provided relevant information on request; and

(C) the results of such examination are used only in accordance with this subchapter.

42 U.S.C. § 12112(d)(3).  The primary purpose of this provision is to prohibit pre-offer medical examinations and eliminate discrimination caused by invasive medical questioning during the application process.  Griffin v. Steeltek, Inc., 160 F.3d 591, 594 (10th Cir. 1998).  This provision "guarantees the *confidentiality* of the information gathered and restricts the use to which an employer may put the information." Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 962 (10th Cir. 2002).  However, defendant cites no cases adopting his argument that this statute creates a privilege preventing discovery of records of employee medical examinations in civil litigation.  The Court has independently researched this issue and has found no cases supporting defendant's argument that this statute creates a discovery privilege.

There is no dispute that the Reports contain "confidential" information, but defendant has not shown discovery of the reports is precluded by a recognized privilege.  Defendant cites three cases in which courts have found that other statutes created a privilege in civil litigation.  See Baldridge v. Shapiro, 455 U.S. 345 (1982) (the Census Act, 13 U.S.C. § 9(a), created a statutory privilege preventing disclosure of census data in civil litigation); In re England, 375 F.3d 1169 (D.C. Cir. 2004) (military board proceedings could not be "disclosed to any person not a member of the board," and this language was sufficient to create a statutory privilege from discovery in civil litigation); Chowdhury v. Northwest Airlines Corp., 226 F.R.D. 608 (N.D. Cal. 2004) (Transportation Security Administration regulations restricting disclosure of sensitive security information created valid privilege).  The magistrate judge examined each of the three cases cited by defendant and found that the cases were distinguishable, because the statutory language at issue in those cases expressly prohibited disclosure of information for any purpose.  Dkt. # 76, at 5-7.  The magistrate judge determined that confidentiality rights of third parties, standing alone, do not create

a privilege precluding discovery under Rule 26.  This decision was not clearly erroneous or contrary

and is accurate statement of the law.  See United States Surgical Corp. v. Orris, Inc., 983 F. Supp.

963, 970 (D. Kan. 1997); Abdullah v. Sheridan Square Press, Inc., 161 F.R.D. 25, 28 (S.D.N.Y.

1995).

**B.**

Defendant also appeals the protective order (Dkt. # 91) entered by the magistrate judge

governing the production and use of the Reports.  Dkt. # 92.  Defendant has raised legitimate issues

concerning the disclosure of confidential medical information of third parties and the procedure for

production of the Reports, and this matter should be recommitted to the magistrate judge for further

proceedings.  It may not be necessary for defendant to produce a hard copy of each Report for

unrestricted review by plaintiff's counsel, because many of these Reports will not contain

information relevant to this case.  Defendant also raises a valid argument concerning the public

disclosure of otherwise confidential medical records, because it is not clear if the protective order

(Dkt. # 91) adequately protects the privacy interest of third parties.  Plaintiff argues that the

defendant's conduct should not be shielded from public view, but plaintiff overstates the issue

presented by the defendant's appeal and undervalues the privacy interests of third parties.  Dkt. #

93, at 1-2.  While plaintiff has shown that the Reports are subject to discovery, the Court must take

appropriate steps to protect the privacy interests of third parties to this litigation and to avoid the

unnecessary disclosure of confidential medical information.  It may be permissible for the parties

to file unsealed versions of the Reports after thorough redactions are made, but defendant has raised

valid concerns about the confidentiality of medical information in the Reports.[3]  Plaintiff argues that the protective order requires him to show defendant a copy of a redacted version of any Report that will not be filed under seal.  Dkt. # 93, at 2.  However, this does not address the government's argument that the protective order fails to require sufficient redaction of the Reports, because it imposes no requirement on plaintiff to redact specific information from the Reports and it does specify a procedure to resolve disputes if defendant believes that the redactions are insufficient.  See Dkt. # 91, at 4-5.  The Court finds that defendant's appeal (Dkt. # 92) of the September 28, 2010 protective order (Dkt. # 91) should be granted, and this matter is recommitted to the magistrate judge for further proceedings to determine a protocol for the production of the Reports and to clarify what redactions must be made to permit the filing of unsealed versions of the Reports.

## C.

Defendant requests leave to file a second amended answer asserting a defense based on plaintiff's alleged failure to exhaust administrative remedies.  Dkt. # 82.  He argues that plaintiff did not request counseling within 45 days of his termination, and this administrative requirement had to be fulfilled before plaintiff could file this lawsuit.  Plaintiff responds that defendant's motion is untimely, because defendant was in possession of this information when this case was filed.  He also argues that the proposed amendment would be futile, because he attempted to exhaust this administrative requirement but was informed that the government would not accept his complaint of disability discrimination.

---

[3]   If the case proceeds to trial, it may be necessary for plaintiff to use redacted copies of Reports as evidence and defendant's position that the Reports must be sealed for all purposes is untenable.  While redaction of any information that could be used to identify a third party must be redacted, plaintiff has legitimate and necessary uses for redacted and unsealed copies of Reports, and the Court will not exclude such evidence in its entirety.

Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006); Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004).  "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance . . . the leave sought should, as the rules require, be 'freely given'" Foman v. Davis, 371 U.S. 178, 182 (1962).  An amendment is futile if it would be subject to dismissal pursuant to Fed. R. Civ. P. 12. Jefferson County Sch. Dist.  No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999).  A court may also deny leave to amend "when the party filing the motion has no adequate explanation for the delay." Minter, 451 F.3d at 1206 (quoting Frank v. U.S. West, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  When considering delay as the basis to deny a motion to amend, a court must consider the length of the delay and the reason for the delay to determine if the moving party's actions constitute "undue" delay.  Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1285 (10th Cir. 2006).

Plaintiff argues that defendant's motion to amend should be denied, because plaintiff fully exhausted his administrative remedies and the proposed defense would not be successful.  However, the Court declines to consider the merits of the proposed defense as a ground to deny defendant's motion to amend, because the proposed second amended answer states a colorable defense to plaintiff's claims.  A motion to amend is not the appropriate forum to litigate the merits of a defense when the parties offer conflicting evidence.  Plaintiff may eventually prevail on this issue, but plaintiff's dispute with the factual basis for this defense is not a sufficient reason to deny defendant's motion to amend.

Plaintiff also argues that defendant was aware of evidence supporting this defense well before he filed this motion to amend, and defendant's undue delay in seeking leave to amend has prejudiced plaintiff. Dkt. # 89, at 4. Defendant responds that plaintiff will not be prejudiced within the meaning of Rule 15, because any delay will not prevent plaintiff from conducting discovery on this issue and plaintiff will not be prejudiced in terms of his ability to respond to this defense. Plaintiff is correct that defendant could have asserted this defense earlier and, contrary to defendant's assertions, it was not required to wait for plaintiff's discovery responses before asserting this defense. However, the exhaustion of administrative remedies is a jurisdictional prerequisite in Rehabilitation Act cases, and plaintiff has not cited any authority suggesting that delay in asserting this defense permits the Court to overlook a possible jurisdictional defect. See Woodman v. Runyon, 132 F.3d 1330, 1341 (10th Cir. 1997) (exhaustion of administrative remedies is a jurisdictional requirement before bring a claim under the Rehabilitation Act). The Court will permit the defendant  to file a second amended answer asserting a defense based on plaintiff's alleged failure to exhaust administrative remedies.

**IT IS THEREFORE ORDERED** that Federal Defendant's Objections to [Appeal of] Magistrate Judge's Order Denying Motion for Protective Order (Dkt. # 78) is **denied**; Federal Defendant's Objections to [Appeal of] Magistrate Judge's September 28, 2010 Protective Order (Dkt. # 92) is **granted;** and the matter is **recommitted** to the magistrate judge for further proceedings to develop a protocol for the production, redaction, and filing of the Reports.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Second Amended Answer and Affirmative Defenses (Dkt. # 82) is **granted**, and defendant may file a second amended answer no later than **November 2, 2010**.

**DATED** this 26th day of October, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT